**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION**

CASE NO.:

**SANDY BARRIOS,**

    **Plaintiff,**

v.

**TBC-TIRE & BATTERY CORPORATION,**
A Foreign Profit Corporation,

    **Defendant.**
_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

### **INTRODUCTION**

1. Plaintiff, SANDY BARRIOS ("BARRIOS" or "Plaintiff"), brings this action pursuant to the Family and Medical Leave Act, as amended, 29 U.S.C. § 2601, *et seq*. ("the FMLA"), and pursuant to Section 440.205, Florida Statutes, and Section 448.102(3), Florida Statutes, to recover from Defendant back pay, an equal amount as liquidated damages, actual and compensatory damages, equitable relief, back pay, front pay, declaratory relief, pre-judgment interest, and reasonable attorneys' fees and costs.

### **JURISDICTION**

2. The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1337 and the FMLA, and has the authority to grant declaratory relief under the FMLA, and pursuant to 28 U.S.C. § 2201, *et seq*. This Court has supplemental jurisdiction over Plaintiff's workers' compensation retaliation and Florida Private Whistleblower Act ("FWA") claims, as they arise out of the same operative facts and circumstances as his FMLA claims.

## PARTIES

3. At all times relevant hereto, Plaintiff, BARRIOS, was an employee of Defendant, TBC-TIRE & BATTERY CORPORATION ("TBC"), a Foreign Profit Corporation, and resided in St. Lucie County, Florida.

4. Plaintiff worked for Defendant in St. Lucie County, Florida, and therefore the proper venue for this case is the Fort Pierce Division of the Southern District of Florida.

5. At all times relevant hereto, Defendant employed ten (10) or more employees and was therefore a covered employer as defined by the FWA, and was also an employer covered by the FMLA, because it was engaged in commerce or in an industry affecting commerce which employed 50 or more employees within 75 miles of where Plaintiff worked, for each working day during each of 20 or more calendar workweeks, prior to Plaintiff seeking leave under the FMLA.

6. At all times relevant hereto, Plaintiff was an employee entitled to leave under the FMLA, based on the fact that he: (a) suffered from a serious health condition as defined by the FMLA, which necessitated FMLA leave; and (b) was employed by Defendant for at least 12 months and worked at least 1,250 hours during the relevant 12-month period prior to him seeking to exercise his rights to FMLA leave.

## FACTUAL ALLEGATIONS

7. Plaintiff worked for Defendant from May of 2012 until his termination on September 7, 2018.

8. During his lengthy tenure with TBC, BARRIOS was an excellent employee and had no significant history of disciplinary, performance, or attendance issues.

9. In March of 2018, TBC transferred BARRIOS to one of TBC's most under-performing locations, Store #102, in Port St. Lucie, St. Lucie County, Florida, to act as Service Manager at that Store.

10. The office at TBC's Store #102 was messy and in disarray due to unfiled paperwork lying around, inventory laying around the shop without having been properly received or documented in TBC's systems, missing inventory, broken pieces of shop equipment, and outdated automotive diagnostic equipment.

11. Worse, the oil tanks in the basement at TBC's Store #102 were leaking oil out onto the basement floor, causing an environmental and Occupational Safety and Health Act ("OSHA") hazard.

12. Upon discovering same, BARRIOS objected to, and reported, all of these issues to the Store Manager at Store #102, Torrie Springs, objecting that TBC's actions violated, *inter alia*, 29 U.S.C. § 654(a)(1), *et seq.* (the "OSHA General Duty Clause"), and 33 U.S.C. § 1251, *et seq.* (the "Clean Water Act").

13. These objections were statutorily-protected conduct under the FWA at Section 448.102(3), Florida Statutes.

14. In response to Plaintiff's disclosures and objections, Torrie Springs candidly admitted that he had already discussed these hazards and issues with TBC's corporate office in Palm Beach Gardens, Florida, but that TBC had not yet sent anybody out to address them.

15. Plaintiff resolved all of the issues within a month-and-a-half, with the exception of the leaking oil tanks which remained.

16. In the meanwhile, Plaintiff objected repeatedly to TBC managers and supervisors that others were constantly slipping on the oil in the basement and suffering painful, dangerous falls.

17. Unfortunately, on May 1, 2018, BARRIOS himself slipped on the oil on the basement floor at TBC's Store #102 and severely injured his Achilles tendon, creating a serious

health condition of reduced range of motion, pain, weakness, immobility, and tendinitis. BARRIOS's injury ultimately required surgical repair in February, 2020.

18. BARRIOS immediately reported this incident to TBC as a work-related workplace injury, and sought and received treatment for same at a nearby urgent care facility.

19. This was statutorily-protected conduct under Section 440, *et seq.*, Florida Statutes ("Florida's Workers' Compensation Statute").

20. Plaintiff's disclosure of his serious health condition and treatment for same also triggered TBC's duty to apprise BARRIOS of his rights and responsibilities under the FMLA. *See* 29 C.F.R. 825.300.

21. Nevertheless, BARRIOS was not in fact advised by TBC of his rights under the FMLA, and not offered FMLA, and TBC's failure to do so was a clear violation of the FMLA, constituting actionable interference with BARRIOS' ability to exercise his rights meaningfully. *See Patterson v. Browning's Pharm. & Healthcare, Inc.*, 961 So. 2d 982, 986 (Fla. 5th DCA 2007); 29 C.F.R. 825.220(a)(2).

22. Approximately one (1) week after his injury, BARRIOS informed TBC of three (3) upcoming follow-up visits in order to treat, assess, and address his serious health condition.

23. At that time, BARRIOS requested FMLA paperwork from TBC, explaining to TBC that he was making this request so that he could avail himself of intermittent unpaid leave pursuant to the FMLA in order to treat and address his serious health condition.

24. This was statutorily-protected conduct under the FMLA.

25. Just days later, on May 17, 2018, TBC retaliated against BARRIOS for claiming or attempting to claim compensation under Section 440, *et seq.*, Florida Statutes, for objecting to

TBC's violations of law, and for requesting unpaid leave pursuant to the FMLA, by writing him up spuriously for nebulous "policy violations in store."

26. TBC's retaliation continued on June 8, 2018, via another spurious writeup of BARRIOS for undefined "poor performance," blaming BARRIOS for Store #102's issues despite the fact that he was not the Store Manager.

27. On June 15, 2018, BARRIOS asked TBC's Claims Administrator, Traci Figueroa, to open a workers' compensation claim for him due to his workplace injury and ongoing treatment for same.

28. This was statutorily-protected conduct under Section 440, *et seq.*, Florida Statutes.

29. On July 5, 2018, due to lack of response to this request, BARRIOS reiterated this request, both to Ms. Figueroa and to TBC's Elizabeth Klatt.

30. In mid-July of 2018, TBC's District Manager, Michael Larson, called BARRIOS into his office and excoriated BARRIOS for suffering a workplace injury, for claiming or attempting to claim compensation under Florida's Workers' Compensation Statute, for objecting to TBC's various violations of law, and for suffering a serious health condition and seeking unpaid leave pursuant to the FMLA in order to treat and address same.

31. During this meeting, Mr. Larson told BARRIOS that he could resign on the spot or turn Store #102's performance around completely within the next month.

32. BARRIOS explained to Mr. Larson that, based on historical sales figures, Store #102 was just then entering its annual slow season, and that it would therefore be particularly impracticable to perform a miracle turn-around in one month's time.

33. BARRIOS also reminded Mr. Larson during this conversation that Store #102 was short no fewer than three (3) employees and that chronic understaffing had plagued Store #102 for

quite some time, and that his own service sales per vehicle figures were higher than anybody else's in Store #102, proving that he was doing his job quite well.

34. In response, Mr. Larson stated dismissively that he did not care about these issues raised by BARRIOS.

35. On September 7, 2018, Mr. Larson called BARRIOS in for another meeting.

36. At that time, Mr. Larson informed BARRIOS that TBC had taken the decision to terminate his employment, effective immediately, despite the availability of less draconian options such as demotion, which TBC routinely employed.

37. At all relevant times, BARRIOS was eligible to receive FMLA-protected leave. *See* 29 U.S.C. §2611(2)(A).

38. TBC unquestionably terminated Plaintiff's employment in retaliation for suffering a workplace injury, for filing or attempting to file a valid workers' compensation claim following his workplace injury, for seeking FMLA leave, and for objecting to other illegalities in the workplace.

39. Defendant did not have a legitimate, non-retaliatory reason for terminating Plaintiff's employment.

40. Any reason provided by Defendant for its termination of Plaintiff's employment is a pretext and a cover-up for illegal retaliation.

41. The temporal proximity between Plaintiff's objections to Defendant's illegal conduct, or what Plaintiff reasonably believed to be illegal conduct, and his termination, is sufficiently close to create the necessary nexus between the events.

42. In *Aery v. Wallace Lincoln–Mercury, LLC*, 118 So.3d 904, 916 (Fla. 4th DCA 2013), the Court made clear that it is unlawful to adversely affect an employee for engaging in the

"protected conduct" of objecting to, or refusing to partake in, unlawful activity, or what the employee reasonably believes to be illegal conduct. *See id.* at 916 (To establish a violation of the FWA, an employee must establish that: (1) he objected to or refused to participate in an illegal activity, policy, or practice or what he reasonably believed to be an illegal activity, policy, or practice; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally linked to his objection or refusal).

43. As a result of this illegal conduct, Plaintiff has suffered damages, including loss of employment, wages, benefits, and other remuneration, to which he is entitled.

44. Defendant did not have a subjective or objective good faith basis for its actions, and Plaintiff is therefore entitled to liquidated damages.

45. Plaintiff has retained the law firm of RICHARD CELLER LEGAL, P.A., to represent him in the litigation and has agreed to pay the firm a reasonable fee for its services.

## COUNT I
## WORKERS' COMPENSATION RETALIATION

46. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1through 4, 7 through 11, 14 through 19, 22, 25 through 36, 38 through 40, and 43 through 45, above.

47. On September 7, 2018, Defendant illegally terminated Plaintiff from his employment in violation of Section 440.205, Fla. Stat.

48. Section 440.205 of the Florida Statutes states that: "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law."

49. Plaintiff applied or attempted to apply for workers' compensation on June 15, 2018, following his workplace injury and subsequent treatment, and did so again on July 5, 2018.

50. Plaintiff was retaliated against immediately following his claim or attempt to claims workers' compensation, and in very short order was terminated as a direct result of his entitlement to such benefits, on September 7, 2018.

51. As a result of Defendant's intentional, willful and unlawful actions, Plaintiff has suffered damages, including but not limited to lost wages, lost benefits, lost employment status, as well as humiliation, pain and suffering and other monetary and non-monetary losses.

WHEREFORE, Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including front pay and back pay, potential punitive damages (which will be requested separately via appropriate motion during, or at the completion of discovery), declaratory and injunctive relief, and such other relief as is deemed proper by this Court.

## COUNT II
## UNLAWFUL INTERFERENCE UNDER THE FMLA

52. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 12, 15 through 17, 20 through 26, 30 through 37, 39 through 40, and 43 through 45, above.

53. At all times relevant hereto, Plaintiff was protected by the FMLA.

54. At all times relevant hereto, Plaintiff suffered from a "serious health condition" within the meaning of the FMLA.

55. At all times relevant hereto, Plaintiff was protected from interference under the FMLA.

56. At all times relevant hereto, Defendant interfered with Plaintiff in violation of the FMLA, based upon it failure to notify Plaintiff of his FMLA rights, and offer him FMLA leave, upon his disclosure to Defendant of his serious health condition.

57. At all times relevant hereto, Defendant acted with the intent to interfere with Plaintiff because Plaintiff disclosed his serious health condition and exercised his rights and took or attempted to take unpaid leave after suffering his serious health condition, which should have been FMLA protected.

58. As a result of Defendant's intentional, willful, and unlawful acts by interfering with Plaintiff for disclosing his serious health condition and attempting to exercise, and exercising, his rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

59. As a result of Defendant's willful violation of the FMLA, Plaintiff is entitled to liquidated damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## COUNT III
## UNLAWFUL RETALIATION UNDER THE FMLA

60. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 12, 15 through 17, 20 through 26, 30 through 37, 39 through 40, and 43 through 45, above.

61. At all times relevant hereto, Plaintiff was protected by the FMLA.

62. At all times relevant hereto, Plaintiff suffered from a "serious health condition" within the meaning of the FMLA.

63. At all times relevant hereto, Plaintiff was protected from retaliation under the FMLA.

64. At all times relevant hereto, and for purposes of the FMLA retaliation claim, Defendant acted with the intent to retaliate against Plaintiff because Plaintiff disclosed his serious health condition and attempted to exercise, and exercised, his rights to take medical leave to treat and address his serious health condition, which should have been FMLA protected.

65. As a result of Defendant's intentional, willful, and unlawful acts by retaliating against Plaintiff for exercising his rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

66. As a result of Defendant's willful violation of the FMLA, Plaintiff is entitled to liquidated damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## COUNT IV
## FLORIDA'S PRIVATE WHISTLEBLOWER ACT – UNLAWFUL RETALIATION

67. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1 through 5, 7 through 16, 25 through 26, 30 through 36, and 39 through 45, above.

68. On September 7, 2018, Defendant terminated Plaintiff from his employment in violation of Section 448.102(3), Florida Statutes.

69. Plaintiff was retaliated against and terminated in violation of Section 448.102(3), Florida Statutes, for objecting to illegal activity, or what he reasonably believed to be illegal activity, directed by Defendant's management, and for refusing to participate in same.

70. As a result of Defendant's intentional, willful, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost benefits, lost employment status, as well as humiliation, pain and suffering, and other monetary and non-monetary losses, and has incurred reasonable attorneys' fees and costs.

**WHEREFORE**, Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including, but not limited to, front pay, back pay, and emotional distress damages, as well as his costs and attorneys' fees, declaratory and injunctive relief, and such other relief as is deemed proper by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated this 30th day of March, 2020.

Respectfully Submitted,

*/s/ Noah E. Storch*
Noah E. Storch, Esquire
Florida Bar No. 0085476
Email: noah@floridaovertimelawyer.com
RICHARD CELLER LEGAL, P.A.
10368 W SR 84, Suite 103
Davie, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771

*Attorneys for Plaintiff*